Good morning, Your Honors. May it please the Court, Joe Porta, on behalf of the petitioner, Blika Loho. I'd like to reserve three minutes for rebuttal. You certainly may do so. Just watch the clock. Thank you. Your Honors, this is an immigration asylum case out of Indonesia. If you could raise the volume just a little bit more, I'd appreciate it. I usually don't have a problem with that. But it's for your benefit, I would say that. In any event, it is. Now that you're on target. Now we're good. Okay. This is an immigration case, an asylum case, to be precise. The immigration judge denied all forms of relief based upon an adverse credibility determination. I submit that the adverse credibility determination is flawed and that the case needs to be remanded to conduct several inquiries in the first instance. First, the immigration judge in the instant matter denied the case based upon the petitioner's recitation of certain muggings that she endured in Indonesia. She had taken various forms of public transportation. And the immigration judge found in the instant matter that she was hit from behind and that it was either implausible or not credible, her recitation, that she had seen the attackers. Counsel, let me just, if you don't mind, go to the one thing that concerns me in your case. Many of the reasons relied upon by the immigration judge, in my personal view, are not supported. But at least one is, that is the question whether she reported the 1994 robbery to the police. On page 70 or 71, she says no, she didn't report any of the incidents. And then on page 113, she says yes, she did report the 94 robbery. So there's at least one clear, actual inconsistency in the testimony. And that was one of the things that the IJ relied on. So here's my question to you. If most of the reasons are not supported, but one or two of them are, what do we do under our standard of review? Well, I have a two-part answer to that. First, the court's precedent is clear. You are allowed to uphold an adverse credibility determination if only one of the grounds is properly relied upon. So it doesn't matter if the other ones are bad. Now, the second part of that is it's not an actual inconsistency, Your Honor. It's an apparent inconsistency. I'm referring to page 70 of the transcript. The petitioner's counsel asked petitioner specifically at the hearing, have you or any relative or friend at any time made any police report of any incident while you were living in Indonesia to the best of your knowledge? What do you mean with the report, she asks. The judge interjects at this point and changes the question. Judge changes the question to, okay, with regard to any bad things that happened to you in Indonesia, not to your family, not to any relatives, to you, any harassment or any acts of violence or attempted violence, the question is, did you or anyone close to you report any of these incidents to the police in Indonesia? The 1994 robbery pertained to an incident that happened specifically to her mother. The petitioner was at work at the time. She received a distraught phone call from a friend of hers indicating that her mother was at home and had just been robbed or in the process of being robbed. So I would submit that there is no actual inconsistency. A close review of the chronology of the transcript, if she would have answered the first question, I would agree, Your Honor, but she didn't. That question was taken away by the judge and a new question was asked. So you interpret the material on 70 and 71 to relate to things that happened to her personally, which the 94 robbery didn't, so she can answer no to the first and yes to the second and be consistent? Correct. Okay, I see your point. Counsel, what's bothering me is the fact that these incidents, which allegedly support a persecution finding, assuming there is credibility, all occurred prior to her first trip to the United States. She stays here for a few weeks, goes back, makes a second trip back to the United States, and only after that does she decide that, oh, by the way, she has been persecuted. Just inherently incredible to me as I read this record. What's your response? Well, my response is twofold again. First, the return trips, the first couple of trips that she made to the United States were very short in duration. The first of which was at a point in time when I don't even believe that Indonesians were receiving asylum or it was something that was even broadcast. But what does that have to do with anything? If she goes back to a country which she said will persecute her and therefore she needs asylum, isn't the mere fact that she went back without incident fatal to her cause? I don't believe it's fatal, Your Honor. I believe that given the circumstances of this case, she went back basically in good faith because she didn't know. Yes, she was afraid. And as a matter of fact, after her first return, she suffered another encounter, which is where eight to ten men approached her car, climbed on it, started banging her windows, cracked the windows, and were demanding money. This is a situation where she's facing- But that wasn't an act of persecution, was it? That was robbery or whatever. I'm leaning more towards this court's law in Sale and Lolong, where the court found that Chinese Christian Indonesians are a particularly disfavored group. She sticks out like a sore thumb back in her country, Your Honor. She walks down the street, 97% of the rest of the population looks different than her. And I believe that's part of the conundrum that the judge had in doing this- Are you arguing that Chinese Christian women have an absolute guarantee of asylum under American law? No, actually the court rejected that in Lolong. The court said in Lolong that the mere fact that somebody is ethnic Chinese Christian is not enough. You have to have past instances of harm or violence. Now, what I am submitting is that based on this record, if she is found to be credible, if the IJ's reasons are rejected, the underlying court really hasn't had an opportunity to look at that since Sale came out first, or after this was briefed to the board. Secondly, the judge's decision upon close review is really based upon adverse credibility. And if that's- he didn't enter an explicit well-founded fear determination, an explicit past persecution. He says, I frankly don't believe her, and there's nothing here credible supporting this. I believe the case should be remanded back for that determination. Well, there is some law. I think our cases, frankly, are intention, to say the least. There is some law that suggests that if we reach the conclusion that the testimony was credible, in other words, reject the adverse credibility determination, then we can make a determination on the merits by taking everything she said in her favor. The case law is muddled at best on that. I believe in keeping with the spirit of Ventura, there isn't enough here, in my opinion, for the court to address it in the first instance. It wasn't addressed sufficiently below. I believe the crux of the entire case rests upon credibility as far as this court is concerned. I believe the board and the immigration judge should have an opportunity anew to basically determine. So you're down to about two and a half minutes, if you want to reserve. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court. My name is Anthony Norwood, and I'm here today representing the government. Your Honors, the evidence does not compel the conclusion that the petitioner told the truth about the incidents of harassment and crime, which she claimed to have experienced in Indonesia. And it's that credibility determination which holds this case together and which means the immigration judge's decision should be affirmed. Which determination are you relying on most? You heard Judge Graber, and I agree with Judge Graber, that some of the reasons given are not particularly persuasive, but some may be. What are you relying on primarily? I rely primarily on the totality of the implausibility of the claims. I think that the trike incidents are implausible, that someone came up in two different times, 12 years apart, someone came up behind her and touched her on the back of the tricycle, that she said she could, she did see the assailant or she didn't see the assailant, or the assailant said something to her about being Chinese and did run away or didn't run away. I rest on, I really do rest on the totality of the credibility claim. Do you agree procedurally with opposing counsel that assuming, for the sake of the question, that we were to conclude that none of the reasons relied upon by the IJ was supported by the record, that we would have to then remand the case for further consideration of whether there was past persecution and all the other issues that would remain in the case? Yes, I would agree with the petitioner in his reference to Ventura. I do believe that this was strongly a credibility decision and if the court thought that under the substantial evidence test that the evidence compelled the contrary conclusion, I believe the appropriate relief would be a remand for the board to consider the other issues. I think that's clearly why this is not Sayle or Lolong, because there's the credibility finding. Both Sayle and Lolong were found to be credible. Lolong is a pattern or practice case. Sayle is a disfavored group, individualized risk case under the disfavored group law of the Ninth Circuit, but both of those petitioners were found to be credible and I would agree with Ventura and Thomas. How do you read the record in terms of this coming and going that I discussed with opposing counsel? I haven't come across a published opinion on this yet, but to what extent can the IJ rely on the fact that someone has been back to the country twice since the original alleged persecution? I thought there was a published decision on that and I thought there was one in our brief. I think that's clear. I think that's very compelling evidence that she doesn't have a well-founded fear of persecution in Indonesia. If she's come here and says she didn't know anybody and therefore she went back to the same situation or she said she was too busy, I found that very compelling evidence that as did the IJ, that she doesn't have a well-founded fear of persecution. Anything further, counsel? Really, if there are no further questions, I have nothing. No further questions. Mr. Porta, you have some reserve time. I have found no case to find that the fact that somebody has returned affects your credibility. I believe that this court's jurisprudence refers more specifically to after somebody has been found credible or not, that that determination goes to eligibility for asylum, that it can actually take away from somebody's subjective fear. But the fact that somebody returned after suffering persecution has happened. There's many cases in this circuit I'm looking at. There's one case that's called Boyer-Sedano, which is at 418 F. 3rd, 1082. In that case, a person made reprieve. Excuse me, is that case cited in one of the briefs? No, it's not, Your Honor. Would you, before you leave the courtroom, give to opposing counsel that citation and three copies for the court? Of course. The deputy clerk can give you the form if you need it. Thank you. And in that case, the petitioner had made repeated trips back to Mexico. And that case focused on something a little bit different. But the petitioner had made repeated trips back to Mexico to kind of gather money in attempts to leave. Now, just right there, that's something that he had a reason to go back. In this circumstance, I understand that the petitioner's case is a little bit different. She came to visit and she returned. But at the end of the day, the fact that she came and left really doesn't take away from the fact of whether she's telling the truth or not. As this court has stated in Sale and in Lolong, these types of behaviors are very common in Indonesia. It happens to many people. And there are many people that travel in and out of the country. Now, I understand how this can go to her subjective fear. But as to credibility, which I believe is the only issue before the court, no. All right. Thank you, counsel. Thank you. Any further questions? Further questions? Thank you. The case just argued will be submitted for decision. And we will hear argument next in United States versus Anderson.
judges: Gibson , O'scannlain, Graber